UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/2/2016

MARY LANGTON,

                Plaintiff,

  -against-

TOWN OF CHESTER, ALEX JAMIESON, sued in his
individual capacity, TOWN OF CHESTER LIBRARY
BOARD and TERESA MALLON, sued in her
individual capacity,

                Defendants.

No. 14-cv-9474 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff Mary Langton brings this action against Defendants the Town of Chester (the
"Town") and Alex Jamieson (collectively, the "Town Defendants") and the Town of Chester
Library Board (the "Library Board") and Teresa Mallon (collectively, the "Library Defendants")
for alleged violations of 42 U.S.C. § 1983. Each defendant group has moved to dismiss pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Town
Defendants' motion is GRANTED and the Library Defendants' motion is GRANTED in part
and DENIED in part.

## BACKGROUND

      The following facts are taken from the complaint (ECF No. 1, or the "Complaint") unless
otherwise noted and are accepted as true for the purposes of this motion.

      In January 2012, Plaintiff was appointed by the board of the Town of Chester (the "Town
Board") to serve as a trustee on the Library Board, which position carries a 4 year term. (Compl.
¶¶ 6, 39.) Beginning in 2013, as President of the Library Board, Plaintiff raised issues with the
operations of the library, and, in particular, the performance of the library director Maureen

Jagos. (*Id*. ¶ 7.) Plaintiff continued to have confrontations with Jagos throughout 2013, which culminated in Plaintiff's issuance of a needs improvement performance review for Jagos in 2014. (*Id*. ¶ 17.) The Complaint outlines several of the confrontations between Plaintiff and Jagos, including the following:

- On February 6, 2013, Plaintiff wrote to the Town Supervisor Steve Neuhaus regarding insufficient heating systems in the library and the town's failure to remedy the problem. (*Id*. ¶ 8.) At the time of this letter, Jamieson was a member of the Town Board. (*Id*.)

- In March 2013, the director of the regional library network informed Plaintiff about the possibility of establishing a Friends of the Library group as a 501(c)(3).[1] (*Id*. ¶ 9.) In May 2013, Plaintiff learned that the library had established such a group and donated $1,000 from library funds to the group. (*Id*.)

- In May 2013, Jagos informed the Library Board that the library could purchase new computers for $4,000; however, Jagos later informed that Library Board that she was mistaken and the computers would cost $6,500. (*Id*. ¶ 10.) Jagos requested the Library Board's permission to purchase the computers at the higher price and amend the Library Board's minutes to reflect the board's assent to the new price. (*Id*.)

- During the summer of 2013, Plaintiff sought to have the Library Board adopt a handbook for library staff, and at the August 2013 board meeting she distributed to Jagos and other trustees the handbooks in use at nearby local libraries. (*Id*. ¶ 11.) Plaintiff also requested that Jagos provide the Library Board with a job description to enable the trustees to evaluate Jagos' performance, but she failed to do so. (*Id*. ¶ 12.)

---

[1] The Court construes this as a reference to the tax exempt status of charitable organizations under Section 501(c)(3) of the Internal Revenue Code.

- In late August 2013, Jagos accused Plaintiff of prematurely submitting the library budget to the Town Board.  (*Id*. ¶ 14.)  In actuality, a member of the Town Board had previously received a draft of the preliminary budget at a Library Board meeting and presented it to the Town Board as the final library budget.  (*Id*.)  Plaintiff explained at the Town Board meeting that the draft budget was not final, and the Library Board would take its time to review the budget.  (*Id*. ¶¶ 14-15.)

- In October 2013, Jagos rejected Plaintiff's idea that the Library Board arrange for an independent audit of the library, arguing that it was a waste of money.  (*Id*. ¶ 13.)

- In December 4, 2013, Plaintiff discovered that Jagos intended to close the library for staff training without previously seeking approval from the Library Board, as was past practice.  (*Id*. ¶ 16.)

Plaintiff raised further issues with the operations of the library, including mismanagement of finances, nepotism, and personal use of library property.  (*Id*. ¶ 26.)

Plaintiff, on behalf of the Library Board, gave Jagos her first performance review as Director of the library in January 2014.  (*Id*. ¶ 17.)  The performance review indicated Jagos needed to improve and would be reevaluated in six months.  (*Id*.)  Plaintiff initially drafted the review and received verbal and written comments from other trustees on the Library Board in preparing the final report.  (*Id*.)  Subsequent to Jagos receiving her review, two members of the Library Board attacked Plaintiff and claimed they had not signed off on the final performance review.  (*Id*. ¶ 18.)  One of those members, Eileen Sullivan, had notified the Library Board in August 2013 that she would no longer attend meetings and did not participate in the review process.  (*Id*.)  The other member, Tanya Woods, was the first board member to approve the content of the performance review.  (*Id*.)  Plaintiff responded to these personal attacks in writing.

3

(*Id.*)  In early 2014, Teresa Mallon became the President of the Library Board, and Plaintiff became the Vice President.  (*Id.*)

In response to the performance review, Jagos filed a complaint against Plaintiff in January 2014.  (*Id.* 21.)  Despite lacking jurisdiction over the complaint, Jamieson arranged an investigation of the complaint, which cost the town over $23,000.  (*Id.* ¶ 22.)  The Complaint contends that Jamieson did so to suppress criticism of the functioning of the library.  (*Id.*)  Throughout the course of the investigation conducted by an attorney from Rockland County, Devora Lindeman, Plaintiff was interviewed for more than 7 hours on 2 occasions and supplied documents.  (*Id.* ¶ 23.)

On July 31, 2014, Jamieson held a meeting in his office with Plaintiff and Mallon.  (*Id.* ¶ 24.)  Jamieson demanded that Plaintiff resign, claiming that Lindeman's investigation found that Plaintiff was abusive and a liar.  (*Id.*)  Mallon also claimed she had read Lindeman's report and agreed with Jamieson's assessment of it.  (*Id.*)  Plaintiff refused to resign and requested a copy of the Lindeman report.  (*Id.* ¶ 25.)  Jamieson refused to give Plaintiff a copy or let her read it.  (*Id.*)

On August 1, 2014, as president of the Library Board, Mallon advised Plaintiff that an action would be proposed to remove Plaintiff as a trustee at the August 12 meeting.  (*Id.* ¶ 28.)  On August 5, 2014, Plaintiff's counsel demanded copies of the charges against Plaintiff but was not provided them.  (*Id.* ¶ 28.)  During the August 12 meeting of the Library Board, the board adjourned to executive session and did not allow Plaintiff or her counsel to attend.  (*Id.* ¶ 30.)  After the executive session adjourned, the Library Board voted to remove Plaintiff as a trustee, without providing any reason for its actions.  (*Id.* ¶¶ 32-33.)  Plaintiff and her counsel have continually sought access to the Lindeman report and been denied.  (*Id.* ¶¶ 35-36.)  Plaintiff was

never provided an opportunity to respond to the allegations in the Lindeman report or clear her name.  (*Id*. ¶ 40.)

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).  A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008).  "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

## DISCUSSION

### I.  Standing

"In deciding questions of standing on the basis of the pleadings, the court 'accepts as true all material allegations of the complaint and construes the complaint in favor of the complaining party.'"  *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 417 (E.D.N.Y. 2009) (quoting *Kendall v.*

*Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)).  Constitutional standing requires a plaintiff to show the following: (1) she suffered an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of" exists; and (3) a federal court decision will "likely" redress the injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The Town Defendants contend that Plaintiff lacks standing to bring her First Amendment retaliation claim against them because she fails to establish the second prong of the standing requirement.  (Memorandum of Law in Support of Motion to Dismiss ("Town Defs.' Mot.") or ECF No. 31 at 5.)  In particular, the Town Defendants claim that Plaintiff has standing only against the Library Board, which is the entity that actually removed Plaintiff from her position on the board, and there is no casual connection between the actions of the Town Defendants and Plaintiff's alleged injury—her removal from the board.  (*Id.*)  Plaintiff argues, on the other hand, that the Town Defendants' initiation of a $23,000 investigation into Plaintiff's conduct as a trustee and Jamieson's July 31, 2014 meeting with Plaintiff in which he pressured her to resign from her board position sufficiently establish a causal connection.  (Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Pl.'s Opp.") or ECF No. 22 at 8-9.)

Under the second prong of the standing analysis, the alleged injury must be "fairly traceable to the defendant's allegedly unlawful conduct . . . ."  *Allen v. Wright*, 468 U.S. 737, 751 (1984) *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).  The Second Circuit is clear that the requisite "causal connection" need not be direct causation.  *See Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992) ("A plaintiff does not lack standing simply by virtue of the indirectness of his or her injury . . . .").  In *Sobol*, the Second Circuit, interpreting the Supreme Court's decision in *Allen v. Wright*,

468 U.S. 737 (1984), reasoned that pleadings "would satisfy the fairly traceable requirement if they had alleged all the links in the chain of causation." *Id.*

Accepted as true and construed in the light most favorable to Plaintiff, the facts set forth in the Complaint clearly outline a link between the Town Defendants' actions and Plaintiff's removal from the Library Board. The Town Defendants initiated an investigation into Plaintiff (Compl. ¶ 22), which led to a July 2014 meeting with Jamieson, Plaintiff and Mallon. (*Id.* ¶ 24.) Just one day after the July 2014 meeting, Mallon advised Plaintiff that an action would be proposed during the next meeting of the Library Board to remove Plaintiff as a trustee. (*Id.* ¶ 28.) Accordingly, the Court finds that Plaintiff has standing to pursue her First Amendment retaliation claim against the Town Defendants.

## II.     First Amendment Claims

Plaintiff alleges First Amendment claims against the Town Defendants and the Library Defendants. In particular, the Amended Complaint states that the Town Defendants violated Plaintiff's rights "by actively seeking her removal from the Board of Trustees of the Chester Library Board on account of her criticism of the functioning of the town library" (Am. Compl. ¶44) and the Library Defendants violated her rights "by punishing her for her protected speech and advocacy . . . ." (*Id.* ¶ 45.) "A plaintiff asserting a First Amendment retaliation claim must establish that: '(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). Both defendant groups contend that Plaintiff's First Amendment retaliation claim fails because her speech was not protected by the First Amendment.

To determine whether Plaintiff's speech is protected by the First Amendment, the Court must resolve the dispute between the parties as to whether Plaintiff's status as a volunteer at the Library brings her within the ambit of the public employee First Amendment retaliation claim analysis.  Plaintiff contends that since her position is a volunteer one, her statements should be analyzed under the First Amendment protections afforded private citizens, not public employees. (Pl.'s opp. at 11.)  The Town Defendants assert, on the other hand, that volunteers subject to state action are necessarily public employees.  (Town Defs.' Mot. at 8.)  The Second Circuit has employed the public employee First Amendment claim analysis specifically with respect to volunteers. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545 (2d Cir. 2001) (applying public employee First Amendment retaliation claim analysis to volunteers); *Monz v. Rocky Point Fire Dist.*, 519 F. App'x 724 (2d Cir. 2013) (applying public employee First Amendment retaliation claim analysis to volunteer firefighter).  Moreover, the Court is not persuaded by conclusory statements in the Complaint that Plaintiff was not an employee of the library.  (Compl. ¶ 26.)  The Court will evaluate whether Plaintiff's speech is protected under the analysis applicable to public employees.

A public employee alleging First Amendment retaliation must allege that the speech concerned "matters of public concern rather than . . . personal interest . . . ." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotation and citation omitted).  "Speech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Id*. (citing *Connick*, 461 U.S. at 146; *Garcia v. State Univ. of N.Y. Health Sci. Ctr.*, 280 F.3d 98, 105 (2d Cir. 2001)).  Importantly, "when public employees make statements pursuant to their *official duties*, the employees are not speaking as citizens for First

Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (emphasis added).

The Second Circuit has noted that whether an employee makes a statement pursuant to their official duties is an "objective" test.  *Weintraud v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 202 (2d Cir. 2010).  "The inquiry into whether a public employee is speaking pursuant to her official job duties is not susceptible to a brightline rule.  Courts must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two."  *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012).  A plaintiff's job responsibilities are not confined to a formal employee job description, and speech is made pursuant to official duties when it "is in furtherance of such duties."  *Weintraub*, 593 F.3d at 202 (citing *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007)).  Though this inquiry "may be somewhat fact-intensive, it presents a question of law for the court to resolve."  *Ganim*, 342 F.3d at 112 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citing *Connick*, 461 U.S. at 148 n. 7)).

As a trustee of the library, Plaintiff, along with the other trustees on the Library Board, was charged with overseeing the functioning and management of the library.  (Compl. ¶ 4; N.Y. Educ. Law § 260(1).)  Plaintiff vocalized complaints regarding the library's heating systems (Compl. ¶ 8); mishandling of library funds (*Id*. ¶¶ 9-10); nepotism (*Id*. ¶ 26); and inadequacy of library staff, particularly Jagos (*Id*. ¶¶ 12, 13, 16.)  These statements squarely concern the management, or mismanagement, of the library, and it is precisely these type of critiques and analyses that Plaintiff was charged with generating as a library trustee.  Plaintiff's conclusory statement that "her speech acts as an unpaid volunteer necessarily were made as citizen" is not compelling.  (Pl.'s Opp. at 11.)  In fact, that self-serving statement directly conflicts with the

Complaint's admission that her statements were made "in her role as a Trustee of the Library Board."  (Compl. ¶ 26.)  Because Plaintiff's speech was "part-and-parcel" of her job function as a trustee, the Court finds that it is not protected under the First Amendment and dismisses Plaintiff's retaliation claim.  *See Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) ("If the court determines that the plaintiff either did not speak as a citizen or did not speak on matter of public concern, 'that employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'") (quoting *Garcetti*, 547 U.S. at 418).

## III.    Due Process Claim

The Court next turns to Plaintiff's procedural due process claim, which is asserted only against the Library Defendants.  Courts engage in a two-step analysis when resolving procedural due process claims.  "The threshold issue is whether [Plaintiff] assert[s] a property interest protected by the Constitution."  *Danese v. Knox,* 827 F. Supp. 185, 190 (S.D.N.Y. 1993).  "If a protected interest is identified, the second step is to determine whether the defendants deprived [Plaintiff] of that interest without due process." *Id.*

### A.  Protected Property Interest

"While property interests are constitutionally protected, they are not generally constitutionally *established;* rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Velez v. Levy,* 401 F.3d 75, 85 (2d Cir. 2005) ("*Velez*") (internal quotation marks omitted). A plaintiff has a property interest if she can "demonstrate that state law confers 'a legitimate claim of entitlement'" to a benefit.  *Id.*

Plaintiff has alleged a protected property interest.  New York Education Law § 226 provides two methods for removal of a trustee: (1) removal via the regents for "misconduct, incapacity, [or] neglect of duty" (N.Y. Educ. Law § 226(4)) or (2) removal via a majority vote of the board of trustees following examination of the truth of a written complaint detailing "misconduct, incapacity, or neglect of duty."  (*Id*. § 226(8).)  Under either method, the subject trustee is entitled to notice of his or her proposed removal—at least 10 days' notice in the case of regents' removal and at least 1 week's notice in the case of board removal.  *Id*. §§ 226(4) and (8).  "It is well settled that  . . . a public employee who can be discharged only for cause[] ha[s] a constitutionally protected property interest."  *DeMichele v. Greenburgh Cent. Sch. Dist.*, 167 F.3d 784, 789 (2d Cir. 1999).  Therefore, in light of the fact that Plaintiff could only be removed as trustee in the case of misconduct, incapacity, or neglect of duty (i.e., for cause), the Court finds that Plaintiff had a legitimate claim of entitlement to her trustee position on the Library Board.

The parties dispute whether the fact that Plaintiff's position as a trustee was by appointment (as opposed to an elected position) has any bearing on the protected property interest analysis.  The Library Defendants urge this Court to extend the Second Circuit's holding in *Velez* to the case of appointed officials.  In *Velez*, the Second Circuit held that the plaintiff "lack[ed] a constitutionally cognizable property interest in her elected office."  401 F.3d at 86. However, as this Court previously noted in *Cirulli v. Astorino*, the Second Circuit expressly limited its holding in *Velez* to elected officials and noted that the Supreme Court has subsequently "adopted a more expansive approach to identifying 'property' within the meaning of the 14th Amendment."  No. 14-cv-5459 (NSR), 2015 WL 4635707, at *9 (S.D.N.Y. Aug. 3, 2015) (quoting *Velez*, 401 F.3d at 86–87).  This Court declined to extend the *Velez* holding in

*Cirulli* to appointed officials and sees no reason to depart from that decision at this time. *See Cirulli*, 2015 WL 4635707, at \*9 ("Given the Second Circuit's narrow interpretation of *Taylor* and its progeny, and the fact that appointed officials have a different relationship to the public,[] the Court declines to extend [*Velez*] to appointed officials.") (citing *Stokes v. City of Mount Vernon, N.Y.*, No. 11-cv-7675 (VB), 2012 WL 3536461, at \*9 (S.D.N.Y. Aug. 14, 2012)).

### B.  Deprivation Without Due Process

Having determined that Plaintiff sufficiently alleged a protected property interest in her position as trustee on the Library Board, the Court next turns to the question of whether the Library Defendants deprived Plaintiff of that interest without due process.  To evaluate whether a plaintiff received due process, one of two standards may apply.  If the deprivation is the result of "unauthorized acts by state employees," the Fourteenth Amendment is not violated "so long as the State provides a meaningful post-deprivation remedy." *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996).  If the deprivation "occurs in the more structured environment of established State procedures, rather than random acts, the availability of post-deprivation procedures will not, *ipso facto,* satisfy due process." *Id.*  Instead, the court proceeds to the familiar *Mathews* balancing test.

In *Zinermon v. Burch,* the Supreme Court held that government actors' conduct cannot be considered random and unauthorized if the state delegated to those actors "the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law," even if the act in question "was not . . . sanctioned by state law."  494 U.S. 113, 138 (1990).  The Second Circuit has "since relied on *Zinermon* to hold that the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be

considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." *Rivera–Powell v. N.Y.C. Bd. of Elections,* 470 F.3d 458, 465–66 (2d Cir. 2006) (quoting *Velez,* 401 F.3d at 91–92 & nn. 14–15); *see also DiBlasio v. Novello,* 344 F.3d 292 (2d Cir.2003).

The Library Defendants argue that the availability of a post-deprivation Article 78 proceeding satisfies due process.  (Library Defs.' Mot. at 9.)  However, the Court concludes that the instant case falls within *Zinermon* because the deprivation was a result of an action of the Library Board, the Library Board is one of two entities empowered to dismiss a trustee, and state law entrusts the Library Board to initiate the statutorily mandated notice or hearing prior to such deprivation.  Consequently, a post-deprivation procedural safeguard such as an Article 78 proceeding does not automatically satisfy due process, and the Court must undertake a *Mathews* balancing analysis to determine whether Plaintiff was deprived of her property interest without due process.

In *Mathews*, the Supreme Court noted that what constitutes requisite due process is "flexible" and necessitates an evaluation of the relevant governmental and private interests. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  With that in mind, the Supreme Court announced a three-part balancing test for assessing due process deprivation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.  "[O]rdinarily, procedural due process requires notice and an opportunity to be heard." *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 212 (2d Cir. 1990).

While "[t]he pretermination process need not be elaborate or approach the level of a full adversarial evidentiary hearing, [it] does require that before being terminated such an employee [be given] oral or written notice of the charges against h[er], *an explanation of the employer's evidence,* and an opportunity to present h[er] side of the story."  *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (internal citations and quotations omitted).

Plaintiff contends that she has a "substantial" interest in her trustee position based upon the significant amount of time and effort she dedicated to the functioning of the library.  (Pl.'s Opp. at 18–19.)  This interest is undoubtedly less significant than an interest in an employment position upon which an individual relies for his or her source of income.  Nevertheless, Plaintiff invested a significant amount of her time into overseeing the functioning of the library. Additionally, Plaintiff contends that her removal from the Library Board resulted in "mental anguish, embarrassment, public humiliation and anxiety."  (Compl. ¶ 38.)

Turning to the second factor, the Court finds that the risk of erroneous deprivation is high.  The Complaint alleges that neither Plaintiff nor her counsel were permitted access to the Lindeman report, nor were they permitted access to the executive session of the Library Board, during which time the Library Board voted to remove Plaintiff as trustee.  (Compl. ¶¶ 28, 30.) Consequently, Plaintiff's interests were not represented during the Library Board's deliberations to remove her as trustee, which may have affected the thoroughness of the Library Board's decision-making process.  *See Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 320 (2d Cir. 2002) ("By excluding Ciambriello from the proceedings that culminated in his demotion, [defendants] ensured that Ciambriello's interests were not represented in those proceedings.  The grievance proceeding seems to have suffered as a result of Ciambriello's absence.").

The governmental interest in not affording Plaintiff an opportunity to examine the substance of the complaint against her or rebut the charges in the Lindeman report appears relatively minor.  This is particularly so given that the Library Board held an executive session and hearing to address Plaintiff's removal—it just prevented Plaintiff from participating.  *See Ciambriello*, 292 F.3d at 320 ("Indeed, the governmental interest in not providing a pre-demotion hearing is particularly minimal in this case because the County actually held a hearing prior to Ciambriello's demotion; it simply failed to invite Ciambriello's participation.")

In light of these interests, it appears that Plaintiff was not afforded due process.  Plaintiff was not provided sufficient notice of the charges against her; instead, she was informed that the Lindeman report, which she was prevented from viewing, concluded she was a "liar" and "abusive."  (Compl. ¶ 23.)  Nor was Plaintiff permitted to present her side of the story at the hearing of the Library Board.  Even though Plaintiff's interest is not overwhelmingly substantial, in light of the high risk of erroneous deprivation and relatively minimal governmental interest, the Court denies the Library Defendants' motion to dismiss Plaintiff's due process claim.

### C.  Qualified Immunity

The Library Defendants assert that Mallon is entitled to qualified immunity on Plaintiff's procedural due process claim.  (Library Reply at 9–10.)  "It is well-established that defendants are shielded by qualified immunity as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Velez*, 401 F.3d at 100 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "In deciding whether a right was clearly established, [the Court asks]: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?"  *Young v. Cty.*

*of Fulton,* 160 F.3d 899, 903 (2d Cir. 1998) (citing *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997)).  "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein,* No. 11-cv-7450 (PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v.. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

Mallon points to an apparent discrepancy between the holdings in *Closson v. Board of Selectmen* and *Stokes v. City of Mount Vernon, N.Y.* as evidence that Plaintiff's property right in her trustee position was not clearly established.  In *Closson,* the Connecticut district court concluded "that there is no federal due process protection for an unpaid volunteer position on a municipal board, whether elected or appointed."  No. 3:08-cv-01031 (VLB), 2009 WL 1538138, at *2 (D. Conn. June 1, 2009).  In *Stokes,* a court from this district concluded that plaintiff did in fact have a property interest in his unelected position as a city official.  No. 11-cv-7675 (VB), 2013 WL 1222720, at *4 (S.D.N.Y. Mar. 25, 2013).  Moreover, while the Second Circuit made clear in *Velez* that a plaintiff does not enjoy a property interest in his or her position as an elected official, the law remains less clear with respect to appointed officials.  Because Plaintiff's property interest in her position as trustee was not clearly established in August 2014 when Mallon and the Library Board removed Plaintiff as trustee, the Court concludes that Mallon is entitled to qualified immunity for her actions.[2]

---

[2] The Library Defendants construed the Complaint as seeking a name clearing hearing.  (Library Defs.' Mot. at 11.) However, in her opposition brief, Plaintiff stated that she did not allege such a claim and declined to address the Library Defendants' arguments regarding such a claim.  (Pl.'s Opp. at 13 n. 1.)  In light of Plaintiff's unequivocal statement that the Complaint does not allege an entitlement to a name clearing hearing, the Court need not address the merits of such a claim.

## CONCLUSION

For the foregoing reasons, the Town Defendants' motion to dismiss is GRANTED and the Library Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Court dismisses the First Amendment retaliation claim against the Town Defendants and the Library Defendants. The Court denies the Library Defendants' motion to dismiss Plaintiff's procedural due process claim; however, the Court finds that Defendant Mallon is entitled to qualified immunity on Plaintiff's procedural due process claim. The Library Board is directed to file an answer to the remaining claim within 30 days hereof. Plaintiff and the Library Board are directed to appear for an initial pre-trial conference on April 21, 2016 at 11:15 a.m. Parties shall bring a completed case management plan to the initial pre-trial conference. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 17 and 29.

Dated:   March 2, 2016                                SO ORDERED:
         White Plains, New York

                                          _____
                                          NELSON S. ROMÁN
                                          United States District Judge

17